**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SHANE E. YEAGER, ) | |
| ) | CASE NO.    5:12-cv-02554 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JOHN R. ADAMS |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Shane E. Yeager ("Yeager") challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On March 31, 2009, Yeager filed an application for POD, DIB, and SSI alleging a disability onset date of July 1, 2005. His application was denied both initially and upon reconsideration.

On February 24, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Yeager, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 18.) On March 4, 2011, the ALJ found Yeager was able to perform a significant number of jobs

in the national economy and, therefore, was not disabled. (Tr. 29-30.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-six (36) at the time of his administrative hearing, Yeager is a "younger person" under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Yeager has a high school education and past relevant work as a short order cook, automobile mechanic, and drywall installer/finisher. (Tr. 28.)

*Hearing Testimony*

At the hearing, Yeager testified as follows:

- He believes his disability stems from a 2003 incident when his back gave out resulting in surgery in 2004. (Tr. 40.)

- In 2005, he worked for approximately three months as general manager of Best Price Auto. He quit because he felt his back pain prevented him from performing the job. (Tr. 41-42.)

- In response to a question as to why he quit jobs so frequently after working for only a few months even prior to his alleged onset date, Yeager stated that he was not happy at those jobs. (Tr. 45-46.)

- He cannot work due to back pain, fibromyalgia, and depression. (Tr. 47.)

- He has problems with fecal incontinence. (Tr. 49.) It occurs only when he sits or stands, but not while lying down. (Tr. 71.)

- He has difficulty concentrating. (Tr. 51.)

- He graduated from high school in 1994 and joined the Marine Corps three years later. (Tr. 51.)

- His hobbies include CB radio and watching sports. (Tr. 58-60.)

- He has difficulty sitting. While sitting at the hearing for 40 to 50 minutes, he felt "a lot of pressure" and was experiencing anal leakage. (Tr. 63.) He can sit for 20 minutes before the pain becomes intolerable. He estimates he could sit for one hour total in an eight-hour workday. (Tr. 66.)

- He uses a cane every day, which was prescribed in 2003. He can stand for 15 minutes before needing to change positions. He estimates he could stand for two hours total in an eight-hour workday. Walking is "very difficult." (Tr. 66-67.)

- He can carry a gallon of milk but lifting it hurts his back and left leg. (Tr. 68.)

- He takes a lot of medication and experiences dizziness and vertigo. His

>   medications include Neurontin, Metoprolol, Simvastatin, Noraflex, Busapr, Fentanyl, and morphine. (Tr. 68-71.)

- He recently underwent a radio frequency ablation which reduced the pain in his left knee by fifty percent, though he still experienced numbness and tingling in his left leg. (Tr. 72.)

- He spends most of his day laying in bed. (Tr. 72.) He rated his pain as ten of ten while sitting and a four while lying down. (Tr. 73.)

- He grocery shops once a month with his wife's help. (Tr. 73.)

The ALJ posed the following hypothetical to the VE:

> [C]onsider a hypothetical individual of the claimant's age, education, work experience and the [RFC] to lift and or carry up to 20 pounds occasionally, 10 pounds frequently. Stand and or walk with normal breaks for a total of about six hours in an eight hour workday with the assistance of a handheld device for ambulation.
>
> To sit with normal breaks for a total of about six hours in an eight hour workday. Can frequently climb ramps and stairs, never climb ladders, ropes or scaffolds. Occasionally stoop, kneel or crawl. And further allows a sit stand option and is also simple repetitive and routine.

(Tr. 81-82.)

The VE testified that such an individual was unemployable. Although the VE initially testified that such an individual could not perform any of Yeager's past work but could perform the jobs of an order clerk, sorter, and a grinder of plastics, that response overlooked the sit/stand option limitation. (Tr. 82-83, 85-86.) The ALJ asked the VE whether the jobs of surveillance systems monitor, cashier, or eyeglass cleaner would be available under the first hypothetical. (Tr. 88-89.) The VE responded that he did not believe surveillance systems monitor or eyeglass cleaner positions existed in significant numbers and that the cashier job was not available with a sit/stand option. *Id*.

The ALJ posed a second hypothetical to the VE:

> [C]onsider a hypothetical individual the claimant's age, education, work experience and the [RFC] to perform the functional range of sedentary work that takes into consideration ambulation with a handheld assistive, frequent climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds.
>
> Occasionally stooping, kneeling and crawling. Allows a sit stand option and is also simple repetitive and routine with some more complex tasks.

(Tr. 84.)

      The VE testified that such an individual would be unemployable. (Tr. 84.)

      The ALJ posed a third hypothetical to the VE:

> [C]onsider a hypothetical individual of the claimant's age, education, work experience and the [RFC] to lift and or carry up to 20 pounds occasionally, 10 pounds frequently. Stand and or walk with normal breaks for a total of about six hours in an eight hour workday with a handheld assistive device for ambulation.
>
> Sit with normal breaks for a total of about six hours in an eight hour workday. No climbing of ladders, ropes or scaffolds and is also simple repetitive and routine.

(Tr. 89.)

      The VE initially testified that such an individual could perform the jobs of an order clerk, sorter, and grinder. (Tr. 89-90.) In response to a question from Yeager's counsel, the VE testified that the addition of a sit/stand option to the above hypothetical would eliminate all jobs. (Tr. 90.)

### III. Standard for Disability

      In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

      A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Yeager was insured on his alleged disability onset date, July 1, 2005, and remained insured through June 30, 2009.  (Tr. 20.)  Therefore, in order to be entitled to POD and DIB, Yeager must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Yeager established medically determinable, severe impairments, due to degenerative disc disease and depression.  (Tr. 20.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 21.)  He was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 23.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Yeager was not disabled.  (Tr. 29.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Yeager claims the ALJ erred by: (1) failing to appropriately consider Listing 1.04(C); and, (2) failing to include a sit/stand option in the RFC.[2]  (ECF No. 14.)

**Listing 1.04C**

Yeager argues that the ALJ failed to appropriately consider Listing 1.04C and asserts that the ALJ was "wrong" when he found there was no evidence of nerve root compromise.  (ECF No. 14 at 10.)  In his Reply, Yeager argues that substantial evidence supports a finding that the nerve root was compromised.[3]  (ECF No. 16 at 2.)  The Listing provides as follows:

> 1.04  Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), ***resulting in compromise of a nerve root*** (including the cauda equina) or the spinal code.  With:
>
> ***
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b

(Emphasis added).

As explained by the Sixth Circuit Court of Appeals, a claimant must satisfy all of the criteria of a given listing before that claimant will be found to meet a listing.

> Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3).  A claimant must satisfy all of the criteria to "meet" the listing.  *Id.*; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  However, a claimant is also disabled if her impairment is the

---

[2] While Yeager suggests at the beginning of his brief that he is raising three legal issues, the Court has combined the second and third, as they are briefed as one.  (ECF No. 14 at 11-13.)

[3] To the extent Yeager asks this Court to conduct a *de novo* review, such a request is inappropriate, as a federal court "does not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)); *accord Morgan v. Astrue*, 2011 WL 2292305 (E.D. Ky. June 8, 2011) (although "it is theoretically possible for this Court to review the medical evidence in the record, compare Plaintiff' physical impairments to the Listings, and make its own determination regarding whether Plaintiff's physical impairments meet or exceed a Listing, this Court cannot conduct a *de novo* review of Plaintiff's claim")

> medical equivalent of a listing, 20 C.F.R. §§ 404.1520(a)(4)(iii), 16.920(a)(4)(iii); *Turner*, 381 F. App'x at 488, which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a). An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *Cf. Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, at *7 (6th Cir. 2006) (upholding ALJ who "compar[ed] the medical evidence of Lawson's impairments with the requirements for listed impairments contained in the SSA regulations"); 30 Fed. Proc., L. Ed. § 71:234.

*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414-415 (6th Cir. 2011) (footnotes omitted)

Although Yeager asserts that the ALJ failed to appropriately "consider" Listing 1.04C (ECF No. 14 at 10-11), his argument does not appear to challenge the level of the ALJ's articulation at Step Three. In *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011), the Sixth Circuit observed that an "ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." However, many other decisions, relying on *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006), aver that Sixth Circuit case law does not require a heightened articulation standard at Step Three of the sequential evaluation process. *See, e.g., Walker v. Astrue*, 2013 U.S. Dist. LEXIS 20012 (N.D. Ohio Jan. 18, 2013); *Holbrook v. Astrue*, 2012 U.S. Dist. LEXIS 33984 (N.D. Ohio Mar. 14, 2012); *Marok v. Astrue*, 2010 U.S. Dist. LEXIS 54504, 2010 WL 2294056, *3 (N.D. Ohio, Jun. 3, 2010).

> With respect to Listing 1.04, the ALJ found as follows:
>
> No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. In reaching the conclusion that the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment, the undersigned also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and who reached the same conclusion (20 CFR 404. l527(f), 416.927(f) and Social Security Ruling 96-6p ).
>
> Through his representative, the claimant contends that his severe back impairment meets the criteria of Listing 1.04, Disorders of the spine (Ex. 19E). However, the evidence of record does not demonstrate compromise of a nerve root (including the *cauda equina*) or the spinal cord with additional findings of: (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

8

> limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, positive straight-leg raising or; (B) Spinal arachnoiditis or, (C) Lumbar spinal stenosis resulting in pseudoclaudication.
>
> In support of meeting Listing 1.04, the claimant points to the results of his most recent MRI of July 1, 2010, which indicated "eccentric disc bulge posterior laterally off the left side and touching the traversing left S1 nerve root" (Ex. l9E; l7F/3). Yet, the interpretation of this MRI continues to state that there was no neural foraminal stenosis at multiple levels of the claimant's lumbar spine and only "mild" left-sided stenosis at the L5-S1 level. Previous MRIs of the lumbar spine in June 2008 and January 2009 are further instructive on this point, which noted only a "slight" disc bulge causing "mild" foraminal narrowing bilaterally at several lumbar levels; an asymmetric disc bulge at L5-Sl on the left which "abuts and may impinge on the left S1 nerve root"; and no evidence of thecal sac compression or [sic] the intra-spinal SI nerve roots (Ex. lF/103-106). Pre-dating his August 2004 microdiscectomy is an October 2003 MRI of the lumbar spine that indicated unremarkable findings with respect to the *cauda equina* (Ex. 1 F/159). Moreover, no treating physician, as a result of these various laboratory tests, has diagnosed spinal arachnoiditis or otherwise posited a distinct etiology from the claimant's back disorder as the cause of his bowel incontinence. In sum, the results of several diagnostic tests in this case fail to support the claimant's contention that his degenerative disc disease meets the severity requirements of Listing 1.04.

(Tr. 21.)

Under either standard, the ALJ's above analysis was sufficient. The ALJ thoroughly evaluated the evidence of record, compared the evidence to requirements of the applicable listings, and gave a reasoned conclusion.

To the extent Yeager asserts that there is substantial evidence of record capable of supporting a finding that he met or equaled Listing 1.04C, such an argument is immaterial and misconstrues the substantial evidence standard, which "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) *quoting Mullen*, 800 F.2d at 545. As such, even if the evidence of record could have justified a finding of medical equivalence, that alone does not render an ALJ's finding erroneous.

Yeager challenges the ALJ's finding that there was no evidence demonstrating compromise of a nerve root. Yeager points to two documents that he claims show a compromised nerve root. (ECF No. 14 at 11.) First, Yeager points to the June 28, 2008 MRI of

9

his lumbar spine MRI, which reveals "[a]symmetric disk bulge or broad-based protrusion towards the left L5-S1 relatively unchanged.  This abuts the left S1 nerve root." (Tr. 419.) Second, Yeager asserts that "Dr. Kuenzler believed that [he] could possibly have a cauda equina lesion." (ECF No. 14 at 11, *citing* Tr. 721.)  The Commissioner argues that Yeager's citation to the record is selective. (ECF No. 15 at 11.)  Dr. Kuenzler's assessment reads as follows:

> Shane E Yeager is a 34 year-old man with a 4 year history of back pain as well as saddle anesthesia and minimal bowel incontinence.  His clinical history and examination *could* fit with a cauda equina lesion (with the exception of the brisk reflexes), *but there is no evidence of this on imaging*.  It would be possible for these symptoms to be due to a more proximal spine lesion in the cervical or thoracic spinal cord.  This is less likely to be a peripheral process.  *The degree of pain he experiences is unusual and seems more musculoskeletal than neuropathic*.

(Tr. 722) (emphasis added).

With respect to the first piece of evidence, the parties dispute whether a protrusion "abutting" the nerve root is the equivalent of nerve root compromise.  The ALJ expressly mentioned this piece of evidence, and plainly found that it was not.  Though Yeager disputes this finding, he simply offers no evidence whatsoever to support his position that an abutting nerve qualifies under the Listing.  He cites no medical source or treatise.  Conversely, the ALJ specifically noted that no physician opined that Yeager has a listing-level impairment. (Tr. 21.) As such, Yeager's argument is unpersuasive.  With respect to Dr. Kuenzler's assessment, the Commissioner's argument that the assessment is equivocal is well taken.  From the assessment, it is clear that Dr. Kuenzler was not offering a hard and fast opinion that Yeager had a lesion of the cauda equina, but merely suggesting that it was possible.  Rather, reading the assessment in its entirety, Dr. Kuenzler seemed rather skeptical that Yeager's condition was nerve-related in origin.  Therefore, the Court cannot conclude that the ALJ's decision lacked supporting substantial evidence, as it involved a reasonable analysis of the available medical evidence/opinions.

### *Sit/Stand Option*

Yeager contends that the ALJ's omission of a sit/stand option in the ultimate RFC finding was erroneous.  (ECF Nos. 14 & 16.)

First, Yeager asserts that there is ample evidence of record that would have made a sit/stand option appropriate, and points to evidence that he believes would support such a finding. (ECF No. 14 at 15.) Therefore, he believes the RFC should have included a sit/stand option. Again, Yeager misconstrues the substantial evidence standard. An administrative decision is not subject to reversal merely because substantial evidence could have supported such a restriction. Simply because Yeager proffers a different interpretation of the evidence of record, the ALJ's conclusion is not rendered unreasonable, untenable, or unsupported by substantial evidence. Notably, Yeager has not cited a single medical source opining that he required a sit/stand option.

Yeager also argues that the ALJ somehow erred by presenting the VE with a third hypothetical question that omitted a sit/stand option after it was included in the first two. (ECF No. 14 at 12-14.) ALJs routinely ask VEs several hypothetical questions, frequently changing the limitations contained therein in order to ascertain the impact of various potential limitations. Yeager contends that the ALJ's questions reveal bias and deprived him or a full and fair hearing. *Id*. He further asserts, without a shred of evidence, that the ALJ was determined to find that he was not disabled and crafted his questions to arrive at that result. (*Id*.; ECF No. 16 at 5.)

There exists a "presumption that policymakers with decisionmaking power exercise their power with honesty and integrity," and "any alleged prejudice must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-37 (6th Cir. 2010) (*citing Navistar Int'l Transp. Corp. v. U.S. EPA*, 941 F.2d 1339, 1360 (6th Cir.1991)). "In addition, any claim of bias must be supported by a 'strong showing' of bad faith." *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-37 (*citing City of Mount Clemens v. U.S. EPA*, 917 F.2d 908, 918 (6th Cir.1990)(internal quotation marks omitted)). The *Carrelli* court, in addressing claims of bias by an ALJ, categorically rejected such an argument where the claimant offered "no evidence to meet this high standard."

Yeager's accusation of bias is based solely on conjecture. Because ALJs do not know how they will decide a matter until the evidence of record is reviewed thoroughly, they often ask multiple hypotheticals. As such, the Court declines to draw any insidious inference from the

11

ALJ posing multiple hypothetical questions to the VE.

As Yeager has failed to offer any evidence of bias, his assignment of error is rejected.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the Defendant.

s/ Greg White  
U.S. Magistrate Judge

Date: July 16, 2013

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).**  *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**